Ruth NORTON, Plaintiff,

v.

Len **BLAYLOCK** and Russell Cooper, Charlene Hudson, J. E. Hudson, Finis Hudson, Gene Smith, Wardon Davis and Troy Fowler, Defendants.

No. H–68–C–1.

United States District Court
W. D. Arkansas,
Harrison Division.

June 20, 1968.

Kenneth R. Smith, Yellville, Ark., William S. Walker, Harrison, Ark., for plaintiff.

James L. Sloan, Little Rock, Ark., for Len Blaylock.

## Memorandum Opinion

HENLEY, Chief Judge.

In July 1967, plaintiff, Mrs. Ruth Norton, was discharged from her position as head of the Newton County office of the Arkansas State Department of Welfare. On March 9, 1968, she commenced this action in this Court against Len Blaylock, Commissioner and administrative head of the State Department, and against the members of the Newton County Board of Public Welfare, seeking reinstatement with back pay.

She alleges in substance that her discharge violated federally protected rights; that the amount in controversy is in excess of $10,000, exclusive of interest and costs; and that this Court has jurisdiction by virtue of 28 U.S.C.A. § 1331(a).

Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction; the motion has been submitted on the record, including a copy of the Rules of the Arkansas Merit System Council, and memorandum briefs.

The Arkansas State Department of Welfare, hereinafter referred to as the Welfare Department, was created by Act 280 of 1939, Ark.Stats., Ann. § 83–101 et seq. The Department participates in a number of federal programs involving grants-in-aid to participating States for the purpose of affording financial assistance to classes of persons such as the aged, the disabled, the blind, and crippled and dependent children.

Federal statutes dealing with such programs contain provisions requiring participating States to set up merit systems for personnel and contemplate that permanent State employees working in the programs have at least some security of tenure in their positions. A typical federal requirement will be found in Title XVI of the Social Security Act which provides grants to aid States in affording assistance to the aged, blind, or disabled or in affording aid and medical assistance to the aged. Section 1382 (a) (5) of 42 U.S.C.A. requires a participating State to:

"provide such methods of administration (including methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Secretary [of Health, Education & Welfare] shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods) as are found by the Secretary to be necessary for the proper and efficient operation of the plan." [1]

Acting under his rule-making power, the Secretary of Health, Education and Welfare has promulgated "Standards For A Merit System Of Personnel Administration," which appear in 45 C.F.R. § 70.1 et seq.

Section 70.1(c) states that a merit system of personnel administration for State employees is an "integral part" of the grants-in-aid programs; that the federal agencies concerned are "interested in the development and continued improvement of State merit systems but exercise no authority over the selection, tenure of office or compensation of any individual employed in conformity with the provisions of such systems."

Section 70.1(d) says that laws, rules and regulations to effectuate a State merit system in accordance with the

---

1. Essentially the same requirement is made in connection with federal grants for old-age assistance and medical assistance for the aged, 42 U.S.C.A. § 302 (a) (5), for aid to needy families with children, 42 U.S.C.A. § 602(a) (5), for maternal and child welfare, 42 U.S.C.A. § 703(a) (3), and for aid to the blind, 42 U.S.C.A. § 1202(a) (5).

Standards are a necessary part of the approved State plans; that such laws, rules and regulations constitute a condition of federal grants, and that such laws, rules and regulations "will be reviewed for substantial conformity to these standards" and that the "administration of the merit system will likewise be subject to review for compliance in operation."

Section 70.10(b) provides that employees who have completed their periods of probation and who have acquired permanent status are not to be separated from service save for cause or for reasons of curtailment of work or lack of funds. It is further provided that if a permanent employee is discharged, he or she is to have the right to appeal to an impartial body through an established procedure provided for in the merit system rules.

For the purpose of complying with federal personnel requirements the Arkansas Legislature in 1941 created a Merit Council or a Merit System Council, Ark.Stats., Ann. § 83–121, which has promulgated rules and regulations dealing with Welfare Department personnel and with employees of certain other State agencies which receive federal funds.

Article XII of the Rules of the Council provides that unless an employee is terminated for specified causes or for lack of funds or curtailment of work, his or her tenure shall be "during good behavior." Article XIII provides that an employee who feels aggrieved by a termination of his employment is entitled to a hearing before the Council. Following the hearing, the Council makes a written recommendation to the "appointing authority" for "consideration by the agency," which makes a final decision in the matter.

The authority to discharge Welfare Department employees is expressly vested in the Commissioner with the stipulation that an aggrieved employee may appeal to the Council within 15 days after his or her termination. Ark.Stats., Ann., § 83–107.

Plaintiff was put in charge of the Newton County Welfare Office in 1959 and obtained permanent status as a Welfare Department employee. She was discharged in 1967 on the basis of a charge that she had abused her position for personal and political ends, a charge which, if true, would clearly have justified her dismissal.

Plaintiff appealed to the Council, and a hearing was held. A majority of the Council concluded that the charge or charges against plaintiff had not been sustained and recommended her reinstatement. The Commissioner and the other defendants refused to follow that recommendation, and this suit followed.[2]

As the Court reads it, the complaint charges in essence that the action of the defendants in refusing to reinstate plaintiff in accordance with the recommendation of the Council violated the federal statutes and Standards which have been mentioned, and, additionally, violated the Due Process Clause of the 14th Amendment to the Constitution of the United States.

The motion to dismiss, as drawn, raises only the question of whether or not this Court has subject matter jurisdiction. The Court considers, however, that there is also involved the further question of whether the complaint states a cause of action under either the Constitution or laws of the United States. Those two questions are separate and distinct from each other. While the difference may be largely one of semantics, it can be confusing as pointed out by the Supreme Court in Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912.

---

2. As far as the record shows, plaintiff has never sought judicial review of the final agency action in the State courts. That she might have obtained such review may be indicated by the decisions of the Supreme Court of Arkansas in Adams v. Cockrill, 227 Ark. 348, 298 S.W.2d 322, and McCain v. Collins, 204 Ark. 521, 164 S.W.2d 448. See also the judicial review provisions of the Arkansas Administrative Procedure Act of 1967, Act 434 of 1967, § 13, Ark.Stats.Ann., §, 5–713.

It is evident that whether well or ill founded the complaint is based on federal grounds, and the amount in controversy is more than $10,000. Thus, federal subject matter jurisdiction exists. Montana-Dakota Utilities Co. v. Northwestern Public Service Co., supra; Bell v. Hood, 327 U.S. 678; 66 S.Ct. 773, 90 L.Ed. 939; Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; 1 Barron & Holtzoff, Federal Practice & Procedure, § 25, pp. 121 ff. It remains to be considered whether the complaint states a cause of action arising under the Constitution or laws of the United States.

In passing upon that question the Court will say, first, that it is not concerned at the moment with the merits of the controversy between plaintiff, on the one hand, and the defendants, on the other hand. At this stage of the proceedings the Court is required to assume, without intimating an opinion on the question, that plaintiff's discharge was "without cause." It does not necessarily follow, however, that the agency action complained of gives plaintiff a federally cognizable right of action under the relevant federal statutes and Standards or that the action in question violated the 14th Amendment.

It is important to define precisely the agency action which gives rise to the asserted cause of action. While plaintiff alleges that her initial discharge was wrongful, her cause of action, if any, does not arise from that discharge or from the administrative proceedings before the Council. Unlike many plaintiffs in public employment cases, plaintiff here was afforded an administrative hearing and won her case before the Council. In the last analysis then, her contention must be that the Commissioner and the other defendants were legally bound to follow the Council's recommendation or at least not to disregard it arbitrarily, and that the refusal of the defendants to follow the recommendation violated the Constitution of the United States or the federal welfare statutes and regulations.

 A complaint by an individual that he has been wrongfully barred or discharged from public employment can no longer be dismissed summarily by reference to Justice Holmes's familiar statement to the effect that no man has "[a] constitutional right to be a policeman," McAuliffe v. City of New Bedford, 155 Mass. 216, 29 N.E. 517, quoted in Birnbaum v. Trussell, 2 Cir., 371 F.2d 672, 677. It is established by now that a State may not constitutionally impose arbitrary or discriminatory employment criteria and may not in general condition public employment upon the willingness of an employee or would-be employee to forego the exercise of rights protected by some of the first ten amendments to the Constitution as brought forward into the 14th Amendment. See e. g.: Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982; Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231; Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692; Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216; Smith v. Bd. of Education of Morrilton School District, 8 Cir., 365 F.2d 770; Brooks v. School District, Moberly, Mo., 8 Cir., 267 F.2d 733; Shelton v. McKinley, E.D. Ark., 174 F.Supp. 351, rev'd on other grounds, Shelton v. Tucker, supra. But, the 14th Amendment to the Constitution has not yet been extended so far as to insure job security, as such, to public employees. Aside from considerations of race, religion or constitutionally protected conduct, none of which appear to be involved here, a public employee still assumes the risk, as far as the Constitution is concerned, of being discharged for personal or political reasons. Bailey v. Richardson, 4 Cir., 86 U.S.App.D.C. 248, 182 F.2d 46, cited with approval in Jenson v. Olson, 8 Cir., 353 F.2d 825.

 Many people believe today that career public employees should have job security and should not be subject to arbitrary dismissal or made victims of the "spoils system." To the extent that such belief represents the will of a majority of people, it finds apt expression in civil service legislation; and it may be conceded readily that the discharge of an

employee in violation of such legislation can involve a violation of a 14th Amendment right. But, and again apart from the particular considerations mentioned above, the underlying right to job security is found in the civil service statute in question; it is not to be found in the Constitution, although, as indicated, the Constitution may ultimately protect the statutory right.

█ The requirements of the federal grants-in-aid programs that the States set up and operate under personnel merit systems express strongly a Congressional policy in favor of job security for State welfare employees who have attained permanent status. Those requirements do not lack their sanction. Each program stipulates that if a participating State does not set up and abide by a suitable employee merit system, federal funds may be withheld. 42 U.S.C.A. §§ 304, 605, 715, 1204, and 1384.

However, those requirements do not go as far as they might have gone, and therein lies the weakness in plaintiff's case. The federal Standards, the Arkansas statute, and the Rules of the Merit System Council, which have been approved by the Department of Health, Education and Welfare, all contemplate that a permanent employee is not to be discharged for misconduct without notice and an opportunity to be heard before an impartial administrative tribunal. The federal or the State requirements might have gone further and provided that the Council's determination that a discharged employee should be reinstated should be binding on the agency. Neither set of requirements goes so far. The federal Standards say nothing about the binding effect of a Council determination, neither does the Arkansas statute; and the Rules of the Council make it clear that a recommendation by it in a given case is only a recommendation which the agency may or may not follow.

In his supplemental brief able counsel for plaintiff earnestly contends that the Arkansas Merit System is meaningless if the Commissioner in the course of making a final decision in the case of a particular employee can simply disregard a Merit System Council recommendation favorable to the employee and, in effect, reaffirm his own action in discharging the employee in the first place. A quite similar argument was made and rejected in Phaire v. Merwin, D.C.V.I., 161 F. Supp. 710, decided by Circuit Judge Maris sitting on the district bench by assignment.

In that case plaintiff was an employee of the welfare department of the Virgin Islands which had a merit system essentially the same as that of Arkansas. Plaintiff was discharged; she failed to appeal to the Government Employees Service Commission within the time provided by law, and her discharge became final. She filed suit in federal court for an adjudication that her dismissal was invalid.

Her claim we rejected, basically, on account of her failure to exhaust administrative remedies. However, the Court considered her contention "that she has been denied due process of law because the Governor is the appointing authority who approved her dismissal and who would be called upon, if she had appealed, to review the recommendations of the Commission regarding her dismissal, and as Governor, who is also the official who * * * must give final approval to his own decision as appointing authority." (161 F.Supp. at 713.) The Court said:

"* * * This contention is likewise without merit. It may well be regarded as somewhat incongruous to provide, as (the statute) does, that the Governor must approve, as Governor, his own decisions as appointing authority, particularly since his power to appoint government employees is vested in him as Governor by section 11 of the Revised Organic Act of 1954, 48 U.S.C.A., § 1591. But this is a matter for the Legislature to correct by amendment of the statute. The duplication does not prejudice the plaintiff's rights. Indeed, if anything, it would, if she had pursued her statutory remedy, have afforded her an

additional opportunity to obtain relief." (Ibid.)

 Whether as a matter of policy the head of an agency should be bound by a decision of an administrative tribunal favorable to an employee discharged originally by the agency head is a question which does not address itself to the Court. As far as the federal requirements and the Constitution are concerned, all that the plaintiff was entitled to was a hearing. As stated, she received a hearing before a tribunal which obviously was not unlawfully prejudiced against her and in the Court's estimation the ultimate action of defendants in refusing to reinstate her has inflicted no legal wrong upon her. In other words, under the Constitution and the federal statutory and regulatory requirements, as written, she has no cause of action.

What has just been said is dispositive of the case. The Court thinks, however, that in fairness to Mr. Blaylock some further comment should be made. Plaintiff attached to her complaint as an exhibit a copy of the opinion of the Merit System Council. As stated, the recommendation of the Council was not unanimous. The summary of the evidence indicates that the recommendation might have gone either way, and in such circumstances it might be hasty at least to infer that the Commissioner acted in an arbitrary or discriminatory manner in deciding ultimately to adhere to his own original determination.

■ The Court will say finally that it would have been reluctant to entertain a case of this kind on the merits. The hiring, disciplining and discharging of State employees are primarily matters of State concern. Both judicial policy and due respect for the rights of the States dictate that federal court involvement in State personnel matters be held to a minimum. Cf. McEachern v. United States, W.D.S.C., 212 F.Supp. 706, 711.

An order dismissing the complaint for failure to state a federal cause of action will be entered.