Paige M. MILLER, Plaintiff,

v.

Andrew H. HULSEY, Director of the Arkansas Game and Fish Commission, et al., Defendants.

No. LR–72–C–144.

United States District Court,
E. D. Arkansas, W. D.

Aug. 21, 1972.

William R. Wilson, Jr., of Wilson & Hodge, Little Rock, Ark., for plaintiff.

Russell J. Wools, Little Rock, Ark., for Arkansas Game and Fish Commission.

### MEMORANDUM OPINION

HENLEY, Chief Judge.

On motion of the defendants to dismiss the complaint herein on account of an alleged failure of plaintiff to exhaust administrative remedies.

This is an action commenced by Paige M. Miller, a former employee of the Arkansas State Game & Fish Commission, against Andrew H. Hulsey, Director of the Commission, the Commission itself, and the individual Commissioners in their official capacities. Plaintiff alleges that on June 1 of the current year he wàs discharged by Hulsey, acting for the Commission; that the discharge was wrongful, and that it violated rights guaranteed to plaintiff by the Constitution of the United States. Plaintiff seeks reinstatement with back pay and an award of damages. Jurisdiction is predicated upon 28 U.S.C.A. section 1343(3) and 42 U.S.C.A., section 1983, which must be read together in a case of this kind.

As drawn, the motion is based solely on the contention that plaintiff has not exhausted administrative remedies. It is clear, however, that the Court is confronted with a question of subject matter jurisdiction and with a question as to whether the complaint states a claim upon which relief can be granted. Since the parties have already briefed those questions to some extent along with the precise question raised by the motion, the Court deems it well to dispose of all three questions at this time.

In passing upon the more basic questions before it the Court is required to

accept as true the factual allegations of the complaint and to view that pleading in the light most favorable to plaintiff.

The complaint alleges that in March 1972 plaintiff was assaulted and beaten by a fellow Commission employee and another on account of plaintiff's having testified against them in 1970 in criminal cases tried in this Court. He alleges further that in May of this year he testified against his assailants in this Court in cases growing out of the alleged assault.[1]

Plaintiff further alleges that on June 1 he and the fellow employee involved in the assault were summarily discharged, and that his own discharge was caused in part by the fact that he had testified in the federal case last mentioned. It is further alleged that upon receiving notice of his discharge[2] he requested Director Hulsey to grant him a hearing before the Commission, but that his request was refused.

The record, including exhibits, reflects that plaintiff was discharged by letter dated May 31; no reason for the action was given. He asked for a hearing before the Commission on June 12; his request was refused on June 14; no reason for the refusal was given. This suit was filed on June 26; on June 30 he was offered a hearing at the July meeting of the Commission; through his attorney plaintiff declined that offer on July 7.

█ The claim of the defendants that plaintiff has failed to exhaust administrative remedies gives the Court no trouble.

The Arkansas State Game & Fish Commission is an independent agency of the State of Arkansas created by Amendment 35 to the Constitution of Arkansas. The Commission has plenary power in personnel matters. Employees have no right of tenure, and are subject to discharge with or without cause at the will or whim of the Commission and without notice or hearing. Any hearing that the Commission may accord to a discharged employee is based on administrative grace rather than on legislative requirement.

Thus, when plaintiff was discharged originally, he had no "administrative remedy" to exhaust as that term is conventionally understood in this context. The Court does not think that plaintiff was required to accept the offer of a hearing that was made to him after the filing of the suit. The other questions are more difficult.

Plaintiff alleges that the "right to appear and testify with impunity in a U. S. District Court proceeding is a right secured to (plaintiff) by the laws and Constitution of the United States," and that the defendants have abridged this asserted right. He further alleges that under the Fourteenth Amendment he was entitled to notice of charges against him and a hearing characterized by procedural due process of law.

In Norton v. Blaylock, W.D.Ark. 1968, 285 F.Supp. 659, aff'd 8 Cir., 409 F.2d 772, it was noted that there is a difference between whether a federal court has subject matter jurisdiction of a case and whether the complaint in a particular case states a claim upon which relief can be granted.

█ Since plaintiff has invoked the jurisdiction of this Court on federal statutes and claims that he has been deprived of rights secured by the Constitution and laws of the United States, the Court has subject matter jurisdiction, but it does not necessarily follow that the complaint states a claim upon which relief can be granted by this Court.

---

1. Those cases were tried by the writer, and the defendants therein were ultimately acquitted. They had been charged with obstructing justice in violation of 18 U.S. C.A. § 1503 and with having conspired to do so in violation of 18 U.S.C.A. § 371. There was abundant evidence, including the testimony of Miller, that would have justified the jury in finding the defendants guilty, but the jury after long deliberation came to the opposite conclusion.

2. Technically an "indefinite suspension without pay."

Section 1983 of 42 U.S.C.A. creates a federal cause of action against any person who acting under color of State law deprives any citizen of the United States of any right secured by the Constitution and laws of the United States. And 28 U.S.C.A., section 1343(3) gives a federal District Court jurisdiction of such a cause of action regardless of the citizenship of the parties and of the amount in controversy.

There is no question that the discharge of plaintiff was effected under color of State law. It is incumbent upon plaintiff, however, to show that the defendants in discharging him deprived him of a federally protected right, not merely that they acted wrongfully or unjustly, if they did so act.

 This Court is committed to the view that except to the extent provided by State law and subject to certain federal constitutional restrictions to be mentioned, an employee of the State of Arkansas or one of its agencies has no federally protected tenure and is subject to discharge with or without cause and with or without notice and hearing. Norton v. Blaylock, supra; Diles v. Woolsey, E.D.Ark.1971, Docket No. LR–71–C–202, no published opinion. The principal federal constitutional restraints on the power of an Arkansas agency to terminate an employee are that an employee may not be discharged on such grounds as race, religion, or national origin or because he has exercised or refused to waive some federally protected right.

In *Norton,* supra, 285 F.Supp. at 662, the Court said:

". . . But, the 14th Amendment to the Constitution has not yet been extended so far as to insure job security, as such, to public employees. Aside from consideration of race, religion or constitutionally protected conduct, none of which appear to be involved here, a public employee still assumes the risk, as far as the Constitution is concerned of being discharged for personal or political reasons. . . ."

The plaintiff in the Norton case was a former employee of the State Welfare Department and, as such, she had a right under Arkansas statute law to notice and hearing prior to discharge. The plaintiff in the Diles case, on the other hand, was an employee of the Arkansas Workmen's Compensation Commission, and, like the plaintiff in this case, had no State created security of tenure or any right to notice and hearing prior to discharge. His complaint to this Court was dismissed. After discussing relevant principles and citing cases the Court said:

"The Court finds that the plaintiff was not given notice of the proposed action to be taken against him, and that he was not accorded any hearing marked by the safeguards of procedural due process. The record does not establish that there in fact existed any job related cause for discharge which would have justified his termination had he been protected in his position by a form of civil service. For aught that appears he simply became persona non grata to the members of the Commission . . . and the Court will assume that he was discharged for that reason and nothing else."

 An appeal in *Diles* is now pending in the Court of Appeals, but for present purposes the Court will adhere to its views in that case and in the Norton case and rejects, at least for the time being plaintiff's claim that he had a federally protected right to prior notice of charges against him and a due process hearing in advance of his termination.

 As has been seen, the other branch of plaintiff's federal claim is that he had a federally protected right to appear and testify with impunity in this Court, and that defendants have abridged that right. In evaluating that claim for the purpose of determining

whether it is justiciable in federal court the Court is required to assume that plaintiff's discharge was motivated at least in substantial part by a desire on the part of the defendants to punish him for having testified in this Court in 1972, that the discharge was in retaliation for his action in testifying, and that had he not appeared and testified he would not have been terminated.

The question is not whether plaintiff had a federally protected "right to testify" in this Court. He had no choice in the matter, and defendants did not undertake to prevent him from testifying or to influence his testimony.

The question is whether an employee of a State agency who has obeyed a federal subpoena and has testified as a witness for the Federal Government in a criminal case can constitutionally be summarily discharged by his employer merely because he obeyed the subpoena and gave testimony which may not have been to the liking of his superiors. The Court answers that question in the negative.

■ It should hardly be necessary to say that the relations between the two branches of our federal system should be characterized by comity, and that each branch should show due deference to the machinery and processes of the other. Nothing could be more harmful to the existence of that comity than to permit an agency of one branch to discharge an otherwise satisfactory employee merely because he has obeyed a lawful command of an agency of the other branch.

The District Courts of the United States are courts of law and record created by the Congress pursuant to Article III of the Constitution of the United States, and the civil and criminal jurisdiction of those courts has been created by Act of Congress. If those courts are to function they must possess the power to compel witnesses to attend and give evidence. Further, if those courts are to function properly and efficiently as trial courts, it is highly desirable that witnesses may testify freely and without

fear of reprisal on account of their having testified or on account of the content of their testimony.

■ It was doubtless with those considerations in mind that Congress adopted what is now 18 U.S.C.A., section 1503, which, as noted, is one of the statutes under which the individuals against whom plaintiff testified in May were indicted. That statute makes it a felony for any person to injure a federal witness in his person or property on account of his having testified in federal court or on account of the content of his testimony. The purpose of the statute is obviously two-fold. It is designed not only to protect the public interest in the proper administration of justice but also to protect witnesses from reprisals resulting from their having testified in federal court either under subpoena or without subpoena. Catrino v. United States, 9 Cir., 1949, 176 F.2d 884; Broadbent v. United States, 10 Cir., 1945, 149 F.2d 580; Samples v. United States, 5 Cir., 1941, 121 F.2d 263; Smith v. United States, 8 Cir., 1921, 274 F. 351.

It is true that it has been held that section 1503 does not create a civil cause of action in favor of federal witnesses who have been victims of retaliation consisting of discharges from their jobs by a private employer. Odell v. Humble Oil & Refining Co., 10 Cir., 1953, 201 F.2d 123. However, that case did not involve any State action with respect to the witnesses, and section 1983 did not come into play.

The Court considers that plaintiff's right to be free from reprisals on account of his testimony was a right recognized and protected by section 1503. Unlike the plaintiffs in *Odell*, supra, he does not have to look to that section to give him a federal cause of action; his cause of action is created by section 1983 and is cognizable in this Court.

■ Moreover, aside from the protection afforded by section 1503, it appears to the Court that when a witness mounts the witness stand in a federal court and gives his version of an episode

or event, he is exercising a First Amendment privilege for which exercise he cannot constitutionally be punished by a State, or an agency or subdivision of a State. Cf. Board of Trustees of Arkansas A. & M. College v. Davis, 8 Cir., 1968, 396 F.2d 730; Downs v. Conway School District, E.D.Ark., 1971, 328 F.Supp. 338. Otherwise stated in the language of Norton v. Blaylock, supra, the plaintiff in testifying engaged in constitutionally protected conduct, and the State had no right to discharge him because he did so.

Let the Court hasten to point out that it is not at this time making any finding that plaintiff was in fact discharged because of the fact that he testified or on account of the nature of his testimony. Upon the trial of the case the plaintiff will have the burden of proving that he was unconstitutionally discharged, and he may or may not be able to discharge that burden. All that the Court is saying is that if the allegations of the complaint turn out to be true, plaintiff is entitled to relief in this action.

One more question needs to be considered briefly. Counsel for defendants argues in his brief that the suit against the Commission itself is a suit against the State and is not maintainable, and he also argues that the individual Commissioners share the immunity of the Commission.

Nearly 25 years ago, Judge Lemley in a well reasoned opinion held that a suit filed in a State court against a foreign corporation by the Commission in the exercise of its power of eminent domain was a suit by "the State" and for that reason could not be removed to this Court by the defendant on the basis of diversity of citizenship. Arkansas State Game & Fish Commission v. W. R. Wrape Stave Co., E.D.Ark., 1948, 76 F. Supp. 323. This case in a sense represents the converse of *Wrape,* and the Court agrees with counsel that the complaint against the Commission as an entity is a complaint against the State itself, and that as to the Commission the complaint must be dismissed. However,

the Court does not agree with counsel that the Commissioners are immune from suit, and the complaint will not be dismissed as to them. Board of Trustees of Arkansas A. & M. College v. Davis, supra.

An order will be entered overruling the motion to dismiss, except as to the Commission, and directing the defendant Hulsey and the individual Commissioners to answer the complaint on the merits.