**INLAND OIL & TRANSPORT
CO., Appellant,**

v.

**Brock ADAMS (previously William T. Coleman, Jr.), Secretary of Transportation, Admiral Owen W. Siler, Commandant of the United States Coast Guard, and Dravo Corporation, Appellees.**

No. 77–1629.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1978.

Decided April 24, 1978.

Rehearing and Rehearing En Banc
Denied May 24, 1978.

---

James W. Herron, St. Louis, Mo., for appellant; William G. Ohlhausen and Richard A. Ahrens, St. Louis, Mo., on brief.

John F. Cordes, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., for appellees; Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Robert Kingsland, U. S. Atty., St. Louis, Mo., William Kanter, Atty., Washington, D. C., on brief.

Gary A. Eberhardt and John E. Dooling, Jr. of Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, Mo., and Moorhead & Knox, Pittsburgh, Pa., on brief for appellee, Dravo Corp.

Before BRIGHT, STEPHENSON and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This is an action brought in the United States District Court for the Eastern District of Missouri by Inland Oil & Transport Co. (Inland) for the purpose of securing judicial review of an order of the Commandant of the United States Coast Guard, an agency of the United States which at the present time is within the jurisdiction of the United States Department of Transportation, with respect to four metal barges that in 1976 were being built by the defendant Dravo Corporation (Dravo) under contract with plaintiff. The original defendants were the Secretary of Transportation and the Commandant of the Coast Guard, and at times they will be referred to as the federal defendants. After the suit was filed in August, 1976 Dravo was permitted to intervene as a defendant.

The barges were designed for the transportation of liquid chemicals, including combustible, explosive or poisonous substances, on the inland waters of the United States. Before such a vessel may be put into service it must be inspected by the Coast Guard and must be certified as being safe and suitable for use not only from the standpoint of the safety of lives and property but also from the standpoint of marine environment. 46 U.S.C. §§ 391 and 391a.[1] And the vessel must be reinspected every two years.

The order attacked by plaintiff was in effect a determination by the Commandant that "reverse hydrostatic" testing of the barges for integrity of welds was sufficient to justify the Coast Guard in certifying the vessels as required by the statutes that have been mentioned, and that further testing of the welds by radiological means (X-rays) was not required. Plaintiff seeks to have the order nullified and set aside.[2]

On the same day as that on which the suit was filed plaintiff obtained from the district court, apparently after a hearing at which both the plaintiff and the federal defendants were represented, what amounted to a preliminary injunction which prohibited the Coast Guard from taking any further action with respect to the barges until further order of the court. However, after Dravo had been permitted to come into the

---

1. Section 391 is basically an old statute that was first enacted in 1871 and related to initial and periodic inspections of steam vessels. Such vessels were required to be inspected before being put into service and to be inspected once a year thereafter if they carried passengers and once every two years if they did not carry passengers. Section 391a was first enacted in 1936 and it related to vessels having on board inflammable or combustible liquid cargo in bulk; such vessels were to be deemed to be "steam vessels" for the purposes of § 391 regardless of their means of propulsion. Section 391a was substantially rewritten by the comprehensive Ports & Waterways Safety Act of 1972, Act of July 10, 1972, P.L. 92–340, Title II, 86 Stat. 427 et seq.

2. Subject matter jurisdiction of the district court is based on 28 U.S.C. § 1331(a), as amended. Plaintiff has abandoned an original claim that the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., afforded a second basis of jurisdiction. See Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

case, District (now Senior) Judge John K. Regan sustained Dravo's motion to dissolve the preliminary injunction or stay order. Plaintiff sought no relief from this court with respect to the order of dissolution.

By mid-November, 1976 testing of the barges had been completed, and they had been certified by the Coast Guard as safe and suitable. Dravo tendered the barges to the plaintiff; plaintiff refused to accept them, and they were sold to third parties. The controversy between Inland and Dravo about the barges is now subject to litigation that is pending in the United States District Court for the Western District of Pennsylvania.

In late April, 1977 all of the defendants filed motions to dismiss the complaint, or, alternatively, for summary judgment. On May 13, 1977 Judge Regan entered a short order granting the motions and dismissing the complaint. This appeal followed. We affirm.

Regardless of whether the district court sustained the "motions to dismiss," as such, or the alternative "motions for summary judgment," as such, it is our duty on review to consider the case in the light most favorable to the plaintiff and to accept as true the factual allegations of the complaint.[3] The facts may be stated as follows.

Inland is a Missouri corporation having its principal place of business in St. Louis. It owns and operates barges on the navigable inland waters of the United States in which barges liquid chemicals are transported in bulk. Some of those chemicals are highly flammable or explosive and some of them are capable of seriously damaging the marine environment if they are spilled or leak out of the barges in which they are being transported. There is no question that such barges are covered by §§ 391 and 391a.

Dravo is a corporation, the business of which includes the manufacture and sale of metal barges of the type or types used by plaintiff. In 1973 Inland and Dravo entered into a contract under the terms of which Dravo undertook to construct and deliver to Inland a fleet of four double hulled metal barges which Inland intended to use in the transportation of methyl alcohol. The contract provided that by the time of delivery each barge would have been inspected and approved by the Coast Guard and would be accompanied by a certificate of the agency to the effect that the barge was suitable for the transportation of a category of liquid chemicals described as "Grade A or lower." Methyl alcohol falls within that category, and the complaint describes the substance as follows: "Methyl alcohol, also known as wood alcohol, is a highly flammable, poisonous, liquid alcohol, formed in the destructive distillation of wood or made synthetically and is used as a solvent, antifreeze, or denaturant for ethyl alcohol and in the synthesis of other chemicals. Methyl alcohol is a liquid of extremely low viscosity and will leak through extremely small holes or cracks in barges."

Exhibit "D" to the complaint is a copy of the final decision of the Commandant. It indicates that in inspecting new barges for certification as being fit for service on the inland waters of the nation it is, or at least was, the practice of representatives of the Coast Guard to use visual inspection of the vessels, including welding work, and to test the vessels by means of air and water tests. Exhibit "D" also indicates that while Dravo was required to furnish Coast Guard inspection certificates along with the vessels, Inland had the right to conduct at its own expense additional tests, including X-rays of the welds in the hulls of the vessels. This X-ray testing is referred to at times in the record as non-destructive testing.

As of mid-April, 1976 the four barges were nearing completion. The Coast Guard apparently had made some inspections and Inland, as it had a right to do under its contract with Dravo, had caused the welding to be inspected by an employee of Col-X Corporation of Columbus, Ohio, a commercial testing organization. The Col-X repre-

3. Unless otherwise indicated, quotations appearing in the following statement of facts will be from the complaint. Other quotations will be from exhibits to the complaint.

sentative examined a number of the welds by means of X-rays and found defects. These defects were brought to the attention of Dravo and the Coast Guard by Inland.

On April 19, 1976 a meeting was held in the office of Commander C. E. Pitcock, Commanding Officer of the Coast Guard Marine Safety Office at Pittsburgh. Representatives of Inland, Col-X and Dravo were present. As a result of that meeting, Commander Pitcock issued an order on April 21, 1976 which was expanded to some extent by another order entered on May 28, 1976. Plaintiff describes those orders as follows:

> . . . Commander C. E. Pitcock, Commanding Officer, U. S. Coast Guard, Marine Safety Office, Pittsburgh, Pennsylvania, by orders dated April 21, 1976 and May 28, 1976 (Exhibits A and B attached hereto and made a part hereof), instructed Dravo that prior to certification all rejected areas determined by the radiographs were to be excavated to sound material and repaired using good marine practice. He further instructed Dravo that certain areas of the said barges were to be given additional NDT (non-destructive testing) and that Dravo was to furnish the U. S. Coast Guard with an approved procedure for the non-destructive testing. All repaired areas were then to be retested to the satisfaction of the U. S. Coast Guard inspector. Commander Pitcock informed Inland that any defective welds detected by Inland and brought to the U. S. Coast Guard's attention would be corrected.

4. The last two quotations are from Captain Leadbetter's letter of June 3, 1976 to counsel for Inland rejecting Inland's appeal, Complaint, Exhibit "B".

5. In his opinion the Commandant recognized that there were two main issues before him, the first relating to the standards to be applied in determining whether welding at the cargo space boundaries was acceptable, and the second relating to the acceptability of the welds upon application of the standards. Having so characterized the issues, the Commandant proceeded:
> . . . With respect to the former issue, it is a long standing practice that the Coast

Neither Inland nor Dravo was satisfied with the actions taken by Commander Pitcock and both appealed to Captain J. W. Leadbetter, Chief, Marine Safety Division, Second Coast Guard District, St. Louis, Missouri. Dravo felt that Commander Pitcock's orders went too far; Inland did not think that they went far enough.

As has been seen, Commander Pitcock directed Dravo to conduct non-destructive tests on "the identical areas to those rejected" originally. Inland contended that "all untested areas be adequately tested by non-destructive means to insure the workmanship on all parts of the vessel is satisfactory in all respects," which contention amounted to a claim that the barges be "100 percent non-destructive tested." [4] Captain Leadbetter affirmed the determination of Commander Pitcock, and the appeals were rejected.

Inland completed the administrative process by appealing from Captain Leadbetter's ruling to the Commandant of the Coast Guard, and he rendered his decision in an opinion which has been mentioned. The Commandant's decision modified the original requirements by eliminating the requirement for non-destructive testing of specified areas and requiring in lieu thereof "reverse hydrostatic testing, another water test, as proposed by Dravo as a supplement to the usual visual examination and testing of all welds." The order recited among other things that the "application of a reverse hydrostatic test . . . remains as the final standard to be employed in this case." [5]

Guard relies upon visual inspection of hull welding supplemented by a hydrostatic or air test for barges certificated for inland service. This standard is understood and accepted by the inland barge industry and has resulted in the production of a large inland river barge fleet without a significant history of cargo tank boundary weld failure. This does not mean that the Coast Guard is not amenable to change. However, consideration by the Coast Guard of a proposal to impose a higher standard of construction/inspection than that presently utilized/required can only be predicated on a complete review of casualty statistics or other data reflecting operating experience for the entire river barge industry

Plaintiff commenced this action on August 23, 1976. After stating the facts, plaintiff alleged that the final action of the Commandant was arbitrary, capricious, an abuse of discretion, not in accordance with law, without observance of required procedures, and unwarranted by the facts. The prayer of the complaint was as follows:

WHEREFORE, Inland prays that this Court:

(a) Reverse and set aside the August 13, 1976 final decision of the Commandant of the U. S. Coast Guard;

(b) Affirm the April 21, 1976 order of Commander Pitcock, as clarified by his May 28, 1976 order requiring NDT (nondestructive testing) of the barges which are the subject matter of this action;

(c) Grant Inland the relief sought in its appeal of May 19, 1976 with regard to broadening the scope of NDT to be required by the aforesaid orders of Commander Pitcock;

(d) Stay any action by the U. S. Coast Guard with respect to the barges which are the subject matter of this action so as to preserve the status and rights of Inland pending conclusion of this review proceeding, pursuant to 5 U.S.C.A. § 705; and

(e) Enter such other and further orders as to this Court may seem just and proper in the premises.

The later procedural history of the case in the district court has been stated already. As has been seen, after Judge Regan dissolved his preliminary injunction or stay order the barges were certified, sold by Dravo to third parties after Inland refused to accept them, and presumably put into operation by the purchasers.

The purchasers are not identified nor is there any identification of the waters on which the barges are being operated or of the specific nature of the cargoes that are being transported in them. We will assume, however, that they are being used to transport flammable or explosive materials or chemicals that would be highly deleterious to the marine environment should they leak or spill from one or more of the barges.

In their motions the defendants alleged that the final action of the Coast Guard with respect to the barges was not subject to judicial review, that plaintiff had no standing to maintain the action, and that, in any event, the happenings that had occurred since the suit was filed had rendered the controversy moot.

indicating such a need. It is the intention of the Coast Guard to conduct such a review, which conceivably could result in some change to existing standards for uniform application to the industry. As the details of this review are formulated and data base requirements are identified, the inland barge industry will be called upon as a participant in the study. This aspect will be addressed by separate correspondence. With respect to the latter question and in order to further assess the situation, several Coast Guard inspectors have visited the builder's yard and boarded the four vessels involved. The records of their visits contain no evidence of detection of inferior weldments by visual identification. In addition, the examinations of the barges by Col-X Corporation, an agent for I.O.T., as well as by an ABS surveyor, contain no evidence of inferior weldment determined by visual means. The application of a reverse hydrostatic test therefore remains as the final standard to be applied in this case.

5. It is the understanding of the Coast Guard that Dravo has agreed to repair welding defects brought to their attention as a result of either Coast Guard inspection or inspection by the prospective owners in those cases where agreement is reached that welding defects exist. It is also our understanding that I.O.T. has a contractual right to perform examinations and tests of the barge, and to require radiograph examination albeit chargeable to their own account and that I.O.T. has already exercised this right. Under these circumstances, I.O.T. is able to induce any level of quality control over and above that required by the Coast Guard. It is contrary to Coast Guard regulatory practice to impose varying standards of inspection upon different barges as an accommodation to the owners, especially in cases such as this where the owner is privileged to represent his own interests without intercession by the Federal Government. In this respect, the Coast Guard is aware that barge owners often exceed federal standards for their own special purposes such as to extend vessel service life, reduce maintenance and insure maximum vessel utility.

The final order of the district court recited that the court lacked jurisdiction of the case, and that plaintiff lacked standing to maintain the action. The district court did not touch upon the question of mootness.

For reversal, plaintiff contends that the administrative action in question is subject to judicial review, that plaintiff had standing to maintain the suit, and that notwithstanding the sale of the vessels, the controversy is not moot.

■ We agree with Inland that the district court had subject matter "jurisdiction" of the case since it arises under the laws of the United States, and as 28 U.S.C. § 1331(a) is now written, no jurisdictional amount is required in a case of this kind.

■ The holding of the district court that it lacked "jurisdiction" may mean no more than that the district court did not consider that the complaint stated a claim upon which relief could be granted and was subject to dismissal for that reason. The distinction between absence subject matter jurisdiction of a case and a failure of a complaint to state a claim upon which relief can be granted is one that from a practical standpoint frequently is unimportant. However, the distinction exists. *See Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951); *see also Norton v. Blaylock*, 285 F.Supp. 659, 661–62 (W.D.Ark.1968), *aff'd*, 409 F.2d 772 (8th Cir. 1969), and cases cited.

■ In pertinent part the Administrative Procedure Act provides that agency action shall be subject to judicial review except to the extent that a statute precludes judicial review or to the extent that agency action is committed to agency discretion by law. 5 U.S.C. § 701(a)(1) and (2). The statutes with which we are concerned in this case do not prohibit judicial review of final decisions of the Commandant of the Coast Guard in connection with the certifi-

cation of vessels designed for use on the inland waterways, and we are willing to assume, at least for the sake of argument, that the final decision of the Commandant in this case was subject to judicial review, and that Inland had standing initially to seek such review, at least to the extent that the decision of the Commandant was an ad hoc decision involving these four particular barges. *See Minnesota Public Interest Research Group v. Butz*, 541 F.2d 1292 (8th Cir.), *application to recall and stay mandate denied*, 429 U.S. 935, 97 S.Ct. 347, 50 L.Ed.2d 304, *cert. denied*, 430 U.S. 922, 97 S.Ct. 1340, 51 L.Ed.2d 601 (1977); *Environmental Defense Fund, Inc. v. Corps of Engineers of the United States Army*, 470 F.2d 289 (8th Cir. 1972), *cert. denied*, 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 160 (1973).

■ Nevertheless, we are satisfied that the judgment of the district court should be affirmed. In our opinion the claim of the plaintiff became moot after the barges were finally certified and sold to third parties who were not before the district court. When that sale took place, plaintiff's controversy with the federal defendants ceased to exist from a practical standpoint, and plaintiff's controversy with Dravo is pending in the federal court in Pennsylvania.

Plaintiff concedes that it is no longer entitled to the specific relief that it sought originally. It claims, however, that it may be able to show that it is entitled to declaratory relief.[6]

■ Inland argues that it may be adversely affected by the fact that the allegedly unsafe vessels will operate on the same waters as those on which plaintiff's own vessels operate, and that the former vessels and their cargoes will constitute a source of danger to plaintiff's property and to the safety of its employees. One phase of this argument is that periodic reinspec-

---

**6.** We note in passing that while the complaint contained the usual catch-all phrase to the effect that plaintiff should be awarded such other relief to which it might show itself entitled in lieu of the specific relief described in the pray-

er, nowhere is there any specific reference to any desire of the plaintiff to have any relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202.

tions of the vessels by the Coast Guard will or may be inadequate. We think the possibilities put forward by the plaintiff are too indirect, remote and conjectural to defeat the claim of mootness.

We are not impressed by Inland's contention that the agency action sought to be reviewed may prejudice plaintiff's position in the litigation now pending in Pennsylvania. Plaintiff has not challenged the statement of the Commandant, appearing in Exhibit "D" to the complaint, that Dravo had a right to insist on safety standards higher than those prescribed by the Coast Guard and to have the welds in the barges tested by X-rays to the extent desired by plaintiff so long as plaintiff was willing to pay for the testing. In other words, while plaintiff was not required to accept the barges unless they were approved by the Coast Guard, plaintiff was not required to accept unsafe barges simply because the agency had seen fit to issue the required certificates.

Finally, to the extent to which the plaintiff seeks to attack in this action the standards used by the Coast Guard in connection with these barges as opposed to the application of those standards to the particular vessels in question, we do not consider that the agency should be compelled to meet such an attack within the framework of this case as it now stands, assuming that in some other circumstances the standards might be subject to attack in the federal courts.

Accordingly, the order of the district court dismissing the complaint is affirmed.